IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2016

**SHANGO ATON RAMSEY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Cocke County**
**No. 4922      Ben W. Hooper, II, Judge**
_____

**No. E2015-01464-CCA-R3-PC – Filed August 8, 2016**
_____


Shango Aton Ramsey ("the Petitioner") appeals the Cocke County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance of counsel in connection with his guilty plea and that the State withheld evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1962). Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Bryce W. McKenzie, Sevierville, Tennessee, for the appellant, Shango Aton Ramsey.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; James Dunn, District Attorney General; and Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**I. Factual and Procedural Background**

*Plea Colloquy*

In November 2011, the Petitioner entered an "open plea" in the Cocke County Circuit Court to sale of less than .5 grams of cocaine base, a Class C felony. The State recited the factual basis for the Petitioner's plea, as follows:

[O]n or about December 20, 2010, . . . a confidential informant, an[d] Agent Todd Coleman, of the Drug Task Force, arrived at a house on Domino Street here in Newport and met with [the Petitioner]. Agent Coleman also testified that [the Petitioner] used the telephone provided by the CI to make a telephone call and then Agent Coleman gave a hundred dollars of Drug Task Force funds to [the Petitioner]. [The Petitioner] walked up the street and met with a white BMW, came back and gave a clear, plastic baggie containing a white, rock like substance, weighing two tenths of a gram to Agent Coleman. And that white rock was sent off to the TBI Crime Lab and came back as zero point two grams of cocaine base[] or crack cocaine.

During the plea colloquy, the Petitioner stated that he was thirty-eight years old, was a high school graduate, and could read and write without difficulty. The Petitioner indicated that he had no physical, mental, or emotional conditions that would interfere with his ability to understand the proceedings. The Petitioner indicated that he had discussed with trial counsel the possible punishment involved based upon the charged offenses. He agreed that he had discussed the case with trial counsel and that they had talked about whether or not to proceed to trial. The Petitioner acknowledged that he was giving up his right to a jury trial, that he had not been forced to plead guilty, and that he was entering his plea freely and voluntarily. The Petitioner also stated that he was satisfied with trial counsel's performance.

At a subsequent sentencing hearing, the trial court sentenced the Petitioner, as a Range III persistent offender, to ten years' incarceration. The trial court noted that the Petitioner had a lengthy criminal history, including at least nine felony convictions, eighteen misdemeanors convictions, and seven prior violations of probation. The Petitioner filed a notice of appeal with this court but later filed a motion seeking to voluntarily dismiss the appeal, which this court granted. See State v. Shango Ramsey, No. E2012-01340-CCA-R3-CD (Tenn. Crim. App. Dec. 11, 2012) (order).

*Post-Conviction Proceedings*

On August 28, 2013, the Petitioner filed a pro se petition for post-conviction relief.[1] Following the appointment of counsel, an amended petition was filed, alleging

---

[1] The record on appeal does not contain a copy of the judgment of conviction. Without a copy of the judgment, it is difficult to tell whether the direct appeal was timely filed and, consequently, whether the petition for post-conviction relief was filed within the one-year statute of limitations. However, the State did not assert the statute of limitations as a defense, and the post-conviction court ruled on the merits of the petition. Accordingly, we presume that the petition was timely filed.

the denial of effective assistance of counsel, an unknowing guilty plea, and a violation of Brady.

At the post-conviction hearing, the Petitioner testified that trial counsel was appointed to represent him after his original attorney, who was appointed shortly after his arraignment in September 2011, had to withdraw from the case because of a conflict of interest. Consequently, the Petitioner did not speak to trial counsel about his case until he came to court on November 8, 2011, the day of his guilty plea. The Petitioner stated that trial counsel played an audio CD of the drug transaction but claimed that counsel showed him no other discovery relating to his case. The Petitioner explained that the audio recording contained both the transaction and a minute and a half phone call allegedly between the confidential informant ("CI") and himself. He recalled that, while listening to the recording, he heard the name "Boswell" and recognized the CI as Nick Boswell. The Petitioner stated that he did not listen to all of the recording with trial counsel; he only listened to "the part where Nick first come [sic] to my house and stuff." The Petitioner maintained that he did not see any other evidence relating to his case before he entered his plea.

The Petitioner testified that, after speaking with trial counsel and listening to a portion of the audio recording, he returned to the jury box in the courtroom. At that time, another inmate, Trevor Stewart, asked the Petitioner, "Who got you?" When the Petitioner responded, "I think it was Nick Boswell," Mr. Stewart informed the Petitioner that Mr. Boswell was deceased. The Petitioner then motioned for trial counsel to come over, and he told trial counsel that the CI in his case "might be passed away." According to the Petitioner, trial counsel spoke to the prosecutor briefly and then told the Petitioner that he was "mistaken." The Petitioner stated that, based upon that representation from trial counsel, he agreed to plead guilty. He testified that he had been in custody for about a month before the November 8 court date and that he "had no way of learning anything about Mr. Boswell." The Petitioner said that he relied upon the information from trial counsel in deciding whether to enter a plea and, if he had known that Mr. Boswell was in fact deceased,[2] he would not have entered his guilty plea.

On cross-examination, the Petitioner admitted that, when he was listening to the audio recording with trial counsel, he told trial counsel to "cut it off" after he heard Mr. Boswell on the recording. He also admitted that Mr. Boswell was the CI that he gave drugs to during the recorded transaction. The Petitioner testified that he and Mr. Boswell

---

[2] At the hearing, the parties stipulated that Mr. Boswell was deceased. However, the parties were unaware of the date of Mr. Boswell's death, and the Petitioner indicated that he would supplement the trial record with documentation establishing the date of death. The Petitioner never supplemented the record.

had been friends and had "hung out a lot." He further acknowledged that Mr. Boswell had been a drug addict and had used crack cocaine.

Trevor Stewart, an inmate in Cocke County, testified that he was in the jury box with the Petitioner on November 8, 2011. Mr. Stewart recalled telling the Petitioner that Mr. Boswell was deceased and that he should not plead guilty "without knowing about his case first[.]" Mr. Stewart stated that the Petitioner had been unaware of Mr. Boswell's death and that the Petitioner then informed trial counsel that Mr. Boswell was deceased. According to Mr. Stewart, trial counsel did not respond to Petitioner, looked away, and started talking to the trial judge. Mr. Stewart said trial counsel "didn't never say nothing else about it."

Trial counsel testified that she was appointed to represent the Petitioner after his indictment. She recalled that, originally, the public defender's office had been appointed to represent the Petitioner but had to withdraw when a conflict of interest was discovered. Trial counsel stated that she received discovery from the State, which she reviewed. Trial counsel could not recall making the Petitioner a copy of the discovery but testified that she went over the papers and audio recording with him in the jury room. Trial counsel recalled that the discovery information did not list the name of the CI used in the case. Trial counsel testified that she had spoken to the Petitioner at previous court dates prior to November 8, 2011. She stated that she had previously asked the court for a continuance so that the Petitioner could review discovery. Trial counsel recalled that she had "a hard time staying in contact" with the Petitioner prior to court appearances, explaining that the Petitioner did not maintain contact with her office and that it was "very hard to find him." Trial counsel agreed that, before the November 8 court appearance, she had not known the identity of the CI, and she had not listened to the audio recording of the transaction.

Trial counsel recalled that, during court on November 8, she asked the bailiff to take the Petitioner, who was in custody, to the jury room so that she could review discovery with him. Trial counsel used her laptop to play part of the audio recording for the Petitioner. As the Petitioner listened to the recording, he identified the CI to trial counsel as Mr. Boswell. Trial counsel recalled that, after some discussion, the Petitioner said that "he had heard enough" and did not want to listen to the rest of the recording, and he instructed trial counsel to "cut off the tape." Trial counsel stated, however, that she had reviewed the entire audio recording by herself before having the Petitioner listen to it. Counsel explained that, although she did not know Mr. Boswell, the Petitioner identified Mr. Boswell by voice. The Petitioner told trial counsel that the "[w]ord on the street" was that Mr. Boswell was deceased. The Petitioner then suggested that trial counsel tell the prosecutor that the Petitioner knew that the CI was deceased. Trial counsel stated that she provided this information to the prosecutor, who then contacted the agent on the case. After speaking with the agent, the prosecutor told trial counsel that

- 4 -

the agent verified that Mr. Boswell was deceased. However, the prosecutor informed trial counsel that the agent had seen and heard the drug transaction and that the agent would be able to testify as a witness at trial, notwithstanding the CI's death. Following her discussions with the prosecutor, trial counsel explained to the Petitioner that the State "still had an additional witness that . . . would be able to testify at trial against him should he decide to proceed to trial."

Trial counsel said that she filed a request for discovery and specifically asked for Brady material. She stated that she considered the death of the CI potential exculpatory information. Trial counsel stated that, in her experience with drug cases, she typically learned the identity of the CI after her client reviewed the audio or video recording of the drug transaction. Trial counsel explained that, typically, the prosecutor's office did not turn over the name of the CI until about a month away from trial. Counsel stated, "This case was never set for trial . . . so it was still premature in the procedure here for that witness to be turned over, the name of the witness." She stated that she considered the discovery "ongoing" and explained, "It was very early in the case . . . and I didn't expect the name of the informant to come until later in time."

Trial counsel recalled that after she reviewed discovery with the Petitioner, including the audio recording of the drug transaction, the Petitioner was under the impression that the only witness that the State had was the CI. However, after speaking to the prosecutor, trial counsel told the Petitioner that he was mistaken and that the State had an additional witness who could testify at trial. Trial counsel stated that she did not investigate the CI's death any further after the Petitioner told her Mr. Boswell was deceased and the prosecutor confirmed that information with the agent in charge of the case.

Trial counsel could not recall if she told the Petitioner that the CI was deceased after speaking to the prosecutor. However, trial counsel did recall telling the Petitioner that there was "still another witness." Trial counsel explained that she spoke "extensively" with the Petitioner about his entering an "open plea" and about the impact of the State's not having testimony from the CI. She explained to the Petitioner that there were three possible outcomes to his criminal case—dismissal, trial, or some form of plea. She discussed with the Petitioner that because the State had an agent that observed and heard everything in the drug transaction, the case did not "die with the CI." When trial counsel asked the Petitioner if he wanted a trial, the Petitioner stated that he thought the State was "being unfair with the offers that he was being given" and that he would have "a better shot" with his sentence at a sentencing hearing. Ultimately, the Petitioner told trial counsel that he wanted to enter a plea of guilty, knowing that the CI was deceased. Trial counsel stated that she did not ask for a continuance to investigate whether the CI was deceased because there was "no question that he was dead." She recalled that the

- 5 -

Petitioner had no concerns about the death of the CI at the time of his guilty plea. Trial counsel stated that, in her opinion, the CI was "not a linchpin material witness," and his death would not result in a dismissal of the case because the State's primary witness was still available to testify.

On cross-examination, trial counsel stated that the prosecutor was unaware of the identity of the CI when trial counsel asked about the status of the CI. The prosecutor had to speak to the case agent to learn the CI's identity and whether he was deceased.

Agent Todd Coleman of the Jefferson County Sheriff's Department testified that he was assigned to the Fourth Judicial District Drug Task Force. On December 20, 2010, Agent Coleman was working with Mr. Boswell as a CI when Mr. Boswell called the Petitioner to arrange a drug transaction for crack cocaine. Agent Coleman explained, however, that he did not hear the phone conversation between Mr. Boswell and the Petitioner until after the transaction, when he listened to the recording of the call. Agent Coleman testified that he and Mr. Boswell went to a residence on Domino Street in Newport to meet with the Petitioner as Mr. Boswell arranged. When they got to the residence, Agent Coleman and Mr. Boswell exited their vehicle and met the Petitioner in the driveway. Mr. Boswell and the Petitioner agreed to a purchase of one-hundred-dollars' worth of crack cocaine, and Agent Coleman gave the Petitioner a one hundred dollar bill. The Petitioner then used Mr. Boswell's phone to call his supplier. A short time later, a vehicle arrived "up the street," and the Petitioner walked to the vehicle. The Petitioner met with someone in the vehicle and came back holding a piece of crack in his hand. The Petitioner then handed the crack to Agent Coleman. Agent Coleman recalled that the Petitioner wanted a piece of the crack rock but stated that he gave the Petitioner an extra twenty dollars instead. Agent Coleman testified that he later sent the drugs to the Tennessee Bureau of Investigation crime lab where it was analyzed and found to be cocaine base, crack cocaine.

On cross-examination, Agent Coleman acknowledged that he did not know the Petitioner and had not talked to the Petitioner before the day of the transaction. He explained that another agent, Agent David Norton, was in the car with Mr. Boswell when Mr. Boswell called the Petitioner and recorded the phone call. Although Agent Coleman listened to the recorded call following the transaction, he acknowledged that he had not known what the Petitioner's voice sounded like. Agent Coleman stated that he bought the drugs from the Petitioner for one hundred dollars.

At the conclusion of the hearing, the post-conviction court found that the Petitioner and trial counsel "were well aware" that the CI was deceased before the Petitioner entered his guilty plea. The court found that Mr. Boswell's death was "fully, totally, completely discussed" between the Petitioner and trial counsel but that trial

counsel concluded that the State could still proceed to trial without the CI because it had an additional witness. The post-conviction court further found that trial counsel discussed the plea with the Petitioner before it was entered and that counsel provided adequate advice based on the circumstances. The court concluded that trial counsel's representation was not ineffective and that the Petitioner's guilty plea was knowing and voluntary. Further, the post-conviction court found that the prosecutor had no knowledge of the CI's death prior to the Petitioner's court appearance on November 8 and concluded there was no Brady violation. Based upon these findings, the post-conviction court denied relief. This timely appeal followed.

## II. Analysis

On appeal, the Petitioner contends that he received ineffective assistance of counsel resulting in an unknowing and involuntary guilty plea. He contends that trial counsel was ineffective based upon her failure to investigate the identity of the CI and to determine whether the CI would be available for trial. The Petitioner asserts that, had trial counsel filed a motion to obtain the CI's identity and discovered that the CI was deceased, he would not have entered a guilty plea but would have insisted on proceeding to trial. He further contends that trial counsel was ineffective for failing to consider whether any other avenues of defense existed. Specifically, trial counsel did not investigate the admissibility of the recorded phone call between the CI and the Petitioner and whether Agent Coleman could have authenticated the Petitioner's voice. The State responds that trial counsel was effective, and the Petitioner's plea was knowing and voluntary.

*Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The trial court's conclusions of law and

application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for a court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. Apr. 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

*Unknowing and Involuntary Guilty Plea*

Counsel's effectiveness may also implicate the requirement that a plea must be entered knowingly and voluntarily, *i.e.*, that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Don Allen Rodgers, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." Id. at 74.

In this case, the Petitioner has failed to demonstrate that trial counsel was ineffective or that trial counsel's representation led to an involuntary guilty plea. The post-conviction court accredited trial counsel's testimony that she and the Petitioner discussed in detail the discovery provided by the State. When the Petitioner listened to the audio recording of the drug transaction, he identified the CI as his friend, Mr. Boswell. Upon learning from the Petitioner that Mr. Boswell was deceased, trial counsel immediately approached the prosecutor, who confirmed Mr. Boswell's death. Trial counsel then explained to the Petitioner that the death of the CI did not affect the State's ability to prosecute him because the State had another witness who could testify about the transaction. After discussing this with the Petitioner, the Petitioner made the decision to plead guilty and to have the trial court determine his sentence at a sentencing hearing. As noted by the State, the transcript of the guilty plea submission hearing further supports the post-conviction court's finding that the Petitioner had fully discussed the case with trial counsel. While the Petitioner insists that trial counsel should have learned of the CI's identity and death earlier, trial counsel testified that it was still "very early" in the process and that discovery was "ongoing." Based upon her experience in other drug cases, trial counsel did not expect the State to provide the name of the CI until after the case was set for trial. In any event, the record demonstrates that the Petitioner was aware of the identity of the CI and that the CI was deceased before he decided to enter his plea. Moreover, trial counsel gave the Petitioner appropriate advice on whether to plead guilty or go to trial. The Petitioner has not shown deficient performance or resulting prejudice based upon trial counsel's failure to investigate the identity of the CI and discover that the CI was deceased.

Regarding the Petitioner's claim that trial counsel was ineffective for failing to investigate the admissibility of the recorded phone call between the CI and the Petitioner, Agent Coleman testified that Agent Norton was in the car with Mr. Boswell when Mr. Boswell called the Petitioner and that Agent Norton recorded the phone call. Although

Agent Coleman stated that he would not have been able to identify the Petitioner's voice, it is not clear from the record whether Agent Norton could have identified the Petitioner as the individual speaking to Mr. Boswell. In any event, Agent Coleman testified that, after the phone call, he personally met with the Petitioner and gave the Petitioner one hundred dollars for crack cocaine. Agent Coleman then watched as the Petitioner called his supplier and met the supplier's vehicle. The Petitioner then returned and gave Agent Coleman the crack cocaine, completing the transaction. The Petitioner has failed to establish that the recorded phone call was inadmissible or that counsel was deficient. Because Agent Coleman was present throughout the transaction and was available to testify at trial, the recorded telephone call would not have been dispositive of the trial's outcome. The Petitioner failed to establish that he would not have pleaded guilty and would have insisted on going to trial even if the recording had been excluded.

Because the record does not preponderate against the post-conviction court's determination that counsel did not provide ineffective assistance, the Petitioner has failed to establish his plea was unknowing or involuntary because of counsel's alleged deficient performance. The Petitioner is not entitled to relief on this claim.

*Brady* Violation

The Petitioner also contends that the post-conviction court erred in finding that no Brady violation occurred. He argues that the State's withholding of information concerning the death of Mr. Boswell clearly constitutes a Brady violation, regardless of whether the prosecutor knew of Mr. Boswell's death. The State responds that the Petitioner is not entitled to relief based on an alleged Brady violation because the Petitioner was aware of Mr. Boswell's death and discussed the implications of the CI's death with trial counsel before he entered his guilty plea.

In Brady, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 U.S. at 87. In order to establish a Brady violation, four prerequisites must be met:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
> 2. The State must have suppressed the information;
> 3. The information must have been favorable to the accused; and
> 4. The information must have been material.

- 11 -

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). "The prosecution is not required to disclose information that the accused already possesses or is able to obtain . . . or information which is not possessed by or under the control of the prosecution or another governmental agency." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992) (citing State v. Caldwell, 656 S.W.2d 864, 897 (Tenn. Crim. App. 1983); Banks v. State, 556 S.W.2d 88, 90 (Tenn. Crim. App. 1977)). The defendant must prove, by a preponderance of the evidence, that a Brady violation has occurred. Edgin, 902 S.W.2d at 389.

In order to establish a Brady violation, the evidence need not be admissible; it only needs to be favorable to the defendant. State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993). Favorable evidence includes evidence that "'provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensible, element of the prosecution's version of events, or challenges the credibility of a key prosecution witness.'" Johnson v. State, 38 S.W.3d 52, 56-57 (Tenn. 2001) (quoting Commonwealth v. Ellison, 379 N.E.2d 560, 571 (Mass. 1978)). Evidence is material under Brady "only if there is a reasonably probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (citing Strickland, 466 U.S. at 694). A "reasonable probability" is "a probability sufficient to undermine the confidence in the outcome." Id. (internal quotation marks omitted).

In this case, although the post-conviction court found that the prosecutor did not know of the death of Mr. Boswell before contacting the task force agent assigned to the case, the Petitioner is correct that the prosecution is tasked with constructive knowledge of "any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). However, the evidence of Mr. Boswell's death was not suppressed by the State for purposes of Brady because the Petitioner already possessed that information. The Petitioner informed trial counsel of the identity of the CI and told counsel that Mr. Boswell was deceased. When trial counsel approached the prosecutor with this information, the prosecutor contacted the case agent and confirmed Mr. Boswell's death to trial counsel. Moreover, because the Petitioner knew of Mr. Boswell's death and discussed it with trial counsel prior to his decision to plead guilty, the Petitioner cannot show that the result of the proceeding would have been different had the evidence of Mr. Boswell's death been disclosed by the State through discovery or some other means. See Bagley, 473 U.S. at 682. The Petitioner is not entitled to post-conviction relief based upon this claim.

## III. Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE